IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY, COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | 8:03CV165 |
| LOUELLA ROLLINS, | ) ) ) | |
| Plaintiff - Intervenor, | ) ) ) | |
| vs. | ) ) ) | ORDER |
| WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY and/or OMAHA WOODMEN LIFE INSURANCE SOCIETY, | ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on the plaintiffs' Motion to Compel Production of Information Improperly Withheld as Privileged (Filing No. 190). The plaintiffs filed exhibits attached to the motion. The defendant filed a brief (Filing No. 200) and an index of evidence (Filing No. 199) in opposition to the motion. The plaintiffs then filed a reply brief, with additional exhibits attached (Filing No. 208).

## BACKGROUND

The EEOC filed this action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, alleging gender discrimination, sexual harassment, hostile work environment and retaliation by the defendant against Louella Rollins. **See** Filing No. 10. The EEOC states Rollins began working for the defendant in June of 1989. *Id.* ¶ 9. The EEOC alleges the defendant began harassing Rollins in June of 1994, which continued until her demotion in February 1999. *Id.* ¶10. The complaint alleges Rollins supervised a male who openly voiced his resentment over having to work for a woman, sexually harassed her, undermined her authority, and spread rumors about her. *Id.* ¶¶ 11-15. Although Rollins had complained about the male, when Rollins sought permission to fire the male, she was demoted. *Id.* ¶¶ 16-19. On October 7, 2003, the

court granted Rollins leave to intervene. **See** Filing No. 29. As part of their Answer to the Amended Complaint, the defendant alleges Rollins was demoted based on her performance and that Rollins failed to mitigate her damages. **See** Filing No. 64.

The plaintiffs contest the defendant's designation of certain documents and testimony as privileged. Specifically, the plaintiffs seek (a) Document Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 23, 25, 26, 27, 32, 33, and 35, listed on the defendant's privilege log; (b) the guidelines for investigation described by deponent Olivia Crimiel-Minor; and (c) for Olivia Crimiel-Minor to respond to the questions she was instructed not to answer and appropriate follow up questioning, at the expense of the defendant. The defendant objects to disclosure of any of the disputed documents. The panties have reasonably conferred pursuant to NECivR 7.1(I) and are unable to resolve their dispute.

On March 13, 2007, the court entered an order requiring the defendant to submit the disputed documents, under seal, for an in camera inspection by the court. **See** Filing No. 222. The defendant complied. Upon review of the documents and the other evidence submitted by the parties, the court concludes the plaintiffs' motion to compel should be granted in part and denied in part.

## ANALYSIS

Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. **See** Fed. R. Civ. P. 26(b)(1). Because they reduce the amount of information discoverable during the course of a lawsuit, the attorney-client privilege and, to an even greater extent, the attorney work-product doctrine are narrowly construed. **See** *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005); *In re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006). The federal common law of attorney-client privilege applies to this civil federal question case. **See** *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994).

> The attorney-client privilege encourages full and frank communication between attorneys and their clients so that clients may obtain complete and accurate legal advice. But the privilege protecting attorney-client communications does not outweigh society's interest in full disclosure when legal

>   advice is sought for the purpose of furthering the client's on-going or future wrongdoing.

*In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641 (8th Cir. 2001).

Additionally, "[t]he attorney-client privilege is strongest where a client seeks counsel's advice to determine the legality of conduct before taking action." *Id.* (**citing** *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981). However, communications between attorney and client are not *per se* privileged. For example, the "crime-fraud" exception provides that the attorney-client privilege "'does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime.'" *Id.* (**quoting** *United States v. Zolin*, 491 U.S. 554, 563 (1989)).

The Supreme Court in *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981) determined the communications of an employee of a corporation with the corporation's counsel in order to secure legal advice concerning matters within the scope of the employees' corporate duties, consistent with the underlying purposes of the attorney-client privilege are protected from disclosure. Such protection has been extended to independent consultants or contractors who are the functional equivalent of an employee. **See, e.g.,** *In re Bieter*, 16 F.3d at 938. At the same time, the privilege belongs to the client organization. *Ross*, 423 F.3d at 603-04; *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996). "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985).

The party asserting a privilege to prevent disclosure of information bears the burden of establishing the privilege. *United States v. Hatcher*, 323 F.3d 666, 675 (8th Cir. 2003); *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997) (holding party "met its burden of providing a factual basis for asserting the privileges when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its general counsel"). Accordingly, the defendant must show all five of the following requirements are met.

>   [T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the

> communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

***Diversified Indus., Inc.***, 572 F.2d 596, 609 (8th Cir. 1977) (en banc).

In addition to the attorney-client privilege, the defendant may shield information from discovery if it is subject to the attorney work product doctrine. The work product doctrine was established by ***Hickman v. Taylor***, 329 U.S. 495 (1947), and is now codified in Fed. R. Civ. P. 26(b)(3):

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for the trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.[1]

---

[1] The doctrine was designed to prevent "'unwarranted inquiries into the files and mental impressions of an attorney'" and "recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" ***Simon v. G.D. Searle & Co.***, 816 F.2d 397, 402 (8th Cir. 1987) (**quoting *Hickman v. Taylor***, 329 U.S. 495 (1947)).

There are two types of protected work product. "Ordinary" work product is subject to production only upon a showing of substantial need and inability to secure the substantial equivalent without undue hardship. ***In re Chrysler Motors Corp. Overnight Evaluation Program Litig.***, 860 F.2d 844, 846 (8th Cir. 1988). . . . **See *Shelton v. American Motors Corp.***, 805 F.2d 1323, 1328 (8th Cir. 1986); ***In re Murphy***, 560 F.2d at 336; (Dec. 22, 1993 Order at 4.) "Opinion" work product includes documents that contain

(continued...)

4

Disclosure of documents protected by the work product doctrine to third parties does not necessarily waive the work product immunity. Argument to the contrary confuses the work product doctrine and the attorney-client privilege. **See** 8 Wright, et al., Federal Practice & Procedure, Civ. 2d § 2024 (1994). Disclosure to third persons only waives the work product immunity if it "substantially increased the opportunities for potential adversaries to obtain the information." ***Id.*** (citing cases).

With regard to claiming privilege or protection of trial-preparation materials, Rule 26(b)(5) states:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

**See** Fed. R. Civ. P. 26(b)(5).

The plaintiffs divide the information sought into four categories: (1) conversations with counsel during the investigation of Rollins' internal complaint; (2) investigation procedural guidelines; (3) correspondence with Rollins; and (4) documents listed on the privilege log without sufficient descriptions. The court will address each category seriatim.

**1.  Conversations with Counsel**

The plaintiffs seek production of six documents, listed on the defendant's privilege log, which were prepared in connection with the defendant's investigation of Rollins' internal complaint. Specifically, these are Document Nos. 5-10. Document Nos. 5 and 6

---

[1] (...continued)
the mental impressions, conclusions or opinions of an attorney and is discoverable only in "rare and extraordinary circumstances." ***In re Chrysler Motors Corp.***, 860 F.2d at 846; ***Simon***, 816 F.2d at 402 n. 3 (quoting ***In re Murphy***, 560 F.2d 326, 336 n. 20 (8th Cir. 1977)). Opinion work product is virtually absolutely immune from discovery. ***In re Grand Jury Proceedings***, 473 F.2d 840, 848 (8th Cir. 1973).
***Bieter Co. v. Blomquist***, 156 F.R.D. 173, 179 (D. Minn. 1994).

are undated chronologies "prepared at the request of Scott S. Moore[2] in anticipation of litigation." **See** Filing No. 190, Exhibit 1.  One of the chronologies was prepared by Olivia Crimiel-Minor and the other author is listed as "WOW."  **Id.**  Document Nos. 7 and 10 were prepared by Olivia Crimiel-Minor in early 1999, and are described as a "memorandum discussing legal issues" sent to Mark Theisen,[3] and a "note summarizing discussion of legal issues with legal counsel" to file.  **Id.**  Document No. 8, dated March 9, 1999, is a letter, the first seven pages are from J.R. Breuning[4] to Mark Theisen discussing legal issues.[5]  Document No. 9 is an undated agenda for discussion of legal issues prepared by J.R. Breuning.  The defendant alleges these documents are subject to the attorney-client privilege or work product doctrine, excepting them from discovery.  The plaintiffs also seek to compel responses to related questions posed to Olivia Crimiel-Minor, during her deposition.  Olivia Crimiel-Minor was instructed not to answer the questions by her counsel based on the attorney-client privilege.

The plaintiffs contend the defendant improperly withheld information regarding conversations with counsel, which took place during the investigation of Rollins' internal complaint.  Specifically, the plaintiffs argue the subject documents and communications with counsel are not subject to the attorney-client privilege or work product doctrine because counsel was giving business advice and/or they were conducted or prepared in the regular course of business.  Alternatively, the plaintiffs contend the defendant waived any existing privilege by placing the internal investigation at-issue when it lodged the *Faragher* defense.

In support of their argument, the plaintiffs state the internal investigation conducted by the defendant did not proceed according to the normal procedure.  The plaintiffs

---

[2] Mr. Moore is counsel of record for the defendant in this case.

[3] Mr. Theisen was General Counsel for the defendant.

[4] Olivia Crimiel-Minor testified Mr. Breuning was an attorney working at the law firm currently representing the defendant. **See** Filing No. 208, Exhibit 1 p. 168.

[5] The last page is from Desi Doise to Olivia Crimiel-Minor and it does not appear the defendant seeks to claim any privilege with regard to that portion of the document. **See** Filing No. 190, Exhibit 1.

provided the following summary of facts in support of the motion to compel. Initially, Olivia Crimiel-Minor investigated Rollins' complaint. Olivia Crimiel-Minor completed such investigations as a normal part of her job. Olivia Crimiel-Minor also typically consulted with an attorney representing the defendant during the investigation of all internal discrimination and harassment complaints. With regard to Rollins' complaint, Olivia Crimiel-Minor deviated from her normal procedure by concluding her participation prior to issuing any conclusions or recommendations. The final disposition of the matter was completed by counsel, J.R. Breuning, for the defendant.

### a.     **Attorney-Client Privilege**

The defendant has claimed the attorney-client privilege applies to Document Nos. 7-10. However, according to the privilege log no claim of privilege was asserted with regard to page 8 (Bates No. LR0915) of Document No. 8.[6] **See** Filing No. 190. Exhibit 1. The defendant also lodged the attorney-client privilege objection, with an instruction to the deponent not to answer during questioning about Olivia Crimiel-Minor's meetings and written communications with counsel during the investigation. The plaintiffs argue the above communications and Document Nos. 7-10 are not subject to the attorney-client privilege because they were created during the internal investigation, in early 1999. The plaintiffs argue that if an attorney was involved in the investigation, such involvement was part of the routine investigation, rather than upon request for legal advice.

Accordingly, the issue before the court is whether these communications were made for the purpose of seeking legal advice. **See *Diversified***, 572 F.2d at 609 (en banc). Under such analysis, "when a matter is committed to a professional legal advisor, it is 'prima facie committed for the sake of legal advice and [is], therefore, within the privilege absent a clear showing to the contrary.'" ***In re Bieter***, 16 F.3d at 938 (alteration in original) (**quoting *Diversified***, 572 F.2d at 610).

The court has reviewed the transcript of the portion of Olivia Crimiel-Minor's which was submitted. **See** Filing No. 190, Exhibit 2; Filing No. 208, Exhibit 1. After review of the

---

[6] Document No. 8 contains a six-page opinion from counsel, page 4 is contained in the document twice, making it a seven-page document.

questions placed at issue by the plaintiffs and the deponents responses to those questions, as well as the responses given during the deposition to related questions, the court finds no additional questioning is warranted. For the most part, the deponent answered the questions asked. However, to the extent the deponent refused to respond on the advice of counsel, on the basis of the attorney-client privilege, the objections are sustained.

Similarly, the court has reviewed Document Nos. 7-10 and finds such documents to be subject to the attorney-client privilege. The defendant met its burden of showing such documents are subject to the privilege. Further, the plaintiffs have failed to make a clear showing disputing the defendant's claim such documents were prepared in response to a request for legal advice. Therefore, the plaintiffs' motion to compel is denied with respect to Document Nos. 7, 9 and 10 and the questions posed to Olivia Crimiel-Minor regarding communications with counsel about the internal investigation into Rollins' complaint. Similarly, the plaintiffs' motion to compel is denied with regard to Document No. 8 (pages 1-7). However, no claim of privilege was made as to page 8 and none appears to apply to the document authored by Olivia Crimiel-Minor and sent to Desi Doise, Assistant Vice President and Assistant Field Manager, on March 8, 1999 (Bates No. LR0915).

### b.   Work-Product Doctrine

The defendant has claimed the work product doctrine applies to Document Nos. 5, 6, 9 and 10. Upon review of the documents, the court finds Document Nos. 5, 6, 9 and 10 are subject to the work-product doctrine. These documents appear to be prepared by counsel, or in consultation with counsel, for the defendant in anticipation of litigation and contain the mental impressions, conclusions or opinions of counsel regarding such litigation.

### c.   Waiver: *Faragher* Defense

> [I]n certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted. The loss of the privilege in

> these circumstances is sometimes described as implied waiver, sometimes as "at issue" waiver because it results from the party having placed a contention at issue.

*John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) (**citing** United States v. Nobles, 422 U.S. 225 (1975) (other citations omitted); **see also** *Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000).

The attorney-client privilege and work-production doctrine protection may be waived. **See** *United States v. Nobles*, 422 U.S. 225, 239 (1975); **see also** *Baker*, 209 F.3d at 1055 (applying state law) ("A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue."); *In re Chrysler Motors Corp. Overnight Evaluation*, 860 F.2d 844 (8th Cir. 1988). The Eighth Circuit

> has recognized that the [work-product doctrine] should be applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis. The privilege is designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's interest in revealing all true and material facts relevant to the resolution of a dispute.

*Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002) (internal quotation omitted) (**citing** *Hickman*, 329 U.S. at 510-11; *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997)).

The plaintiffs contend fundamental fairness, under the principles set forth in *Pamida, Inc.*, requires a finding of implied waiver in this matter. The plaintiffs further state the defendant placed the subject documents at issue when the defendant asserted it "exercised reasonable care to prevent and correct promptly any alleged sexually harassing behavior." **See** Filing No. 64 - Answer p. 3. The plaintiffs argue the statement reflects the first element of the affirmative defense recognized in *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Further, the plaintiffs claim the decision making process which was part of the investigation into Rollins' internal complaint is of central importance because the defendant was demoted even though her complaint was found to have merit. At the same time, her subordinate-harassers, whose internal complaints were found to lack merit, were given written warnings and suffered no economic harm.

The defendant asserts it has not waived protection of the subject documents pursuant to **Faragher** because it has not relied on the adequacy of the investigation as an affirmative defense. **See** *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 243-44 (E.D.N.Y. 2001). Furthermore, the defendant states the plaintiffs have received the full contents of the investigative file. More importantly, the defendant

> does not rely on the fact that its internal investigation found insufficient evidence of sex discrimination as a defense to Plaintiffs' claims. Instead, the Society asserts that adequate procedures for addressing internal complaints of discrimination existed, that Rollins was made fully aware of such procedures, and that during the approximately four years of alleged discrimination, she failed to avail herself these procedures.

**See** Filing No. 200 p. 13-14.

Under the circumstance, the court does not find an implied waiver based on the defendant's affirmative defenses in this matter. The defendant did not waive privilege to the subject documents by alleging it "exercised reasonable care to prevent and correct promptly any alleged sexually harassing behavior." The court finds that, on balance, fundamental fairness does not require disclosure of the subject documents. The plaintiffs have full and fair access to the true and material facts at issue and the subject documents would not further reveal otherwise unattainable relevant material facts. Accordingly, the plaintiffs are not entitled to production of the documents at issue on the basis of any waiver implied in the assertion of the defendant's seventh affirmative defense.

### 2.    Investigation Procedural Guidelines

The plaintiffs state that during the deposition of Olivia Crimiel-Minor, counsel for the defendant instructed her not to answer questions related to the content of the defendant's guidelines for conducting investigations. The plaintiffs state the guidelines were provided to the deponent, for her use in the Rollins investigation, and other human resource employees by the defendant. Specifically, during the deposition of Olivia Crimiel-Minor the following exchange took place:

> **Q.**   Can you describe what the guidelines cover?
> [Counsel for the defendant]:  I'm going to object. I think that we've established there's an attorney-client privilege with

> respect to those guidelines through the witness's earlier testimony and instruct the witness not to answer.

**See** Filing No. 190, Exhibit 2 - Minor Depo. 34:3-8.

The plaintiffs contend the topic of the guidelines was covered by the Fed. R. Civ. P. 30(b)(6) deposition notice and by Request for Production No. 4, which requested "copies of any procedures relating to the course and scope of investigations." The defendant did not produce the disputed guidelines in response to Request for Production No. 4 or list the document on the privilege log.

The defendant asserts that the plaintiffs never "specifically requested production of the Society's guidelines for investigating internal complaints of employee discrimination." **See** Filing No. 200, p. 14. The defendant argues it timely and properly objected to the plaintiffs' Request for Production No. 4, which was "overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence." **Id.** Further, the defendant contends the plaintiffs failed to bring the request within a manageable scope or require the defendant to produce any response documents and that it is premature to debate the privileged or non-privileged nature of any such responsive documents.

During a deposition,

> All objections made at the time of the examination to the qualifications of the officer taking the deposition, to the manner of taking it, to the evidence presented, to the conduct of any party, or to any other aspect of the proceedings shall be noted by the officer upon the record of the deposition; but the examination shall proceed, with the testimony being taken subject to the objections.

Fed. R. Civ. P. 30(c).

However, "[a]ny objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30(d)(1). The defendant provides no legal support for the instruction to Olivia Crimiel-Minor not to answer questions related to the guidelines. Accordingly, the plaintiffs motion to compel further questioning of the deponent, at the defendant's expense, on this topic is granted.

Additionally, it is unclear in the record whether production of the guidelines was requested as part of the deposition. However, production was requested pursuant to Request for Production No. 4. Federal Rule of Civil Procedure 34(b) provides "If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." Further, Federal Rule of Civil Procedure 26(e) requires a party to supplement discovery responses "if the party learns that in some material respect the information disclosed is incomplete." If the defendant initially failed to realize the guidelines were responsive to Request for Production No. 4, the defendant should have become aware of the materiality of the guidelines during the deposition. The defendant fails to meet its burden of showing any support for its objections to production of the guidelines. Accordingly, the plaintiffs' motion to compel production of the "Society's guidelines for investigating internal complaints of employee discrimination" as discussed during Olivia Crimiel-Minor's deposition is granted.

### 3.     Correspondence with Rollins

The plaintiffs seek production of seven documents, listed on the defendant's privilege log, which Rollins either authored or received. Specifically, these are Document Nos. 2, 3, 4, 12, 16, 17 and 23. These documents include two letters from Calvin Robinson (Nos. 2 and 12) and a fax cover sheet to James Gleason, transmitting a legal opinion letter (No. 23). Neither Mr. Robinson or Mr. Gleason are identified on the privilege log as legal counsel. The remaining documents are identified on the log as Rollins' "typewritten notes summarizing legal advice from Mark Theisen" who was General Counsel for the defendant at that time, in 1997. **See** Filing No. 190, Exhibit 1. The plaintiffs contend there is no remaining privilege with regard to these documents because Rollins is now an adverse party in litigation with the defendant. The plaintiffs agree to enter into a protective order with regard to any of these documents which should be restricted from access outside this litigation. Finally, the plaintiffs argue "the documents may bear on or explain the actions or state of mind of the various individuals whose actions are at issue in this case." **See** Filing No. 190, p. 19.

The defendant contends these documents are subject to the attorney-client privilege and that such privilege belongs to the defendant and cannot be waived by Rollins. However, the defendant makes no other showing or argument with regard to the specific documents at issue. For example, it is unclear what position is held by Mr. Robinson or Mr. Gleason, or why a fax cover sheet would be subject to the attorney-client privilege. Under the circumstances, neither the court or the other parties are able to assess the applicability of the privilege. Therefore the defendant has failed to meet its burden of showing these documents are subject to the attorney-client privilege by virtue of their argument or the text of the privilege log. ***Diversified***, 572 F.2d at 609.

Furthermore, after review of the documents, the court finds Document No. 2 is a September 22, 1997 letter, with post-script, to Rollins from Calvin E. Robinson in his capacity as Vice President and Associate General Counsel regarding a meeting of Lodge No. 232 held on August 27, 1997. It is unclear who all received a copy of page one, there is no one else listed on the document as a recipient, except that Olivia Crimiel-Minor is hand-written at the top of the document. Page two of the document implies that more copies of page one went out, as page two indicates there were only two copies of page two made due to its confidential nature. Document Nos. 3, 4 and 16 are identical to each other and reflect Rollins' reaction to Document No. 2 and a conversation between Rollins and Mr. Theisen on that subject. Document No. 17 contains two pages, the second page is identical to Document Nos. 3, 4 and 16. Document No. 17, page 1, contains type written notes dated September 29 and 30, 1997 which reflect conversations between the author (who is unidentified in the document, but said to be Rollins by the defendant) and persons named "Ted" who is a manager, and "Desi" about a situation involving Linda Irvine and Edwin Pena. Page 1 contains no advice from or mention of Mark Theisen. The court finds Document No. 2, both pages, are subject to the attorney-client privilege and need not be produced. However, the defendant fails to meet its burden of showing Document No. 17, page 1 (Bates No. LR1213) is privileged. Accordingly, the plaintiffs' motion to compel will be granted with regard to Document No. 17, page 1 (Bates No. LR1213), but denied as to Document Nos. 2, 3, 4, 16 and 17, page 2.

Document No. 12, page 1, is the same September 22, 1997 letter, without the post-script, as the first page of Document No. 2. Document No. 12 also has appended seven other letters or memos dated between July 1994 and May 23, 1995, regarding various incidents involving internal complaints about the behavior of Ted Guminey, Robert Mathias and Kevin Mathias, and taking steps to eliminate rude or offensive behavior. There is no apparent relationship between page 1 and the rest of the document. Further, it is unclear from the privilege log whether the defendant is claiming the attached documents are subject to any privilege. The July 1994 to May 23, 1995 correspondence has various authors and recipients including Rollins, Olivia Crimiel-Minor, Rick Loftin as an Assistant Field Manager, Steven Douglas as an Underwriting Manager, and "All Region Three Associates." For the reason stated above, Document No. 12, page one is subject to the attorney-client privilege. However, the defendant fails to meet its burden of showing the attachments to Document No. 12 (Bates Nos. 0962-0968) are privileged. Accordingly, the plaintiffs' motion to compel will be granted with regard to those latter documents.

Document No. 23 is a fax cover sheet sent to Rollins from Jim Gleason, who is listed as Assistant Vice President and Associate General Counsel. The regarding line says Theodore E Guminey. The document states there were originally 9 other pages send to Rollins, however they are not attached to Document No. 23. Aside from a heading, the date, and a fax number, there is no handwritten comments or other information on the page. The defendant fails to indicate how the fact of the fax cover sheet, or any information contained on the page, is covered by the attorney-client privilege. Therefore, the defendant fails to meet its burden of showing Document No. 23 is privileged. Accordingly, the plaintiffs' motion to compel will be granted with regard to Document No. 23.

### 4.    Privilege Log

The plaintiffs contend the defendant's privilege log is deficient by failing to provide adequate descriptions for Document Nos. 5, 6, 10, 11, 14, 15, 25, 26, 27, 32, 33 and 35. Document Nos. 5, 6 and 10 were discussed above and will not be repeated here. Document Nos. 14, 15 and 33 are undated, but described as computer printouts prepared

pursuant to request of Lindsay K. Lundholm[7] in anticipation of litigation, one with handwritten notes.  **See** Filing No. 190, Exhibit 1.  Similarly, Document Nos. 26, 27, 32 and 35 were prepared or represent information compiled in late 2004 "at the request of Lindsay K. Lundholm."  *Id.*  The defendant withheld these documents on the basis of attorney-client privilege and the attorney work product doctrine.  *Id.*  The plaintiffs contend the privilege log is insufficient to show privilege exists because the person who prepared the document is not always identified and the document was not sent to "any lawyer."  **See** Filing No. 190, p. 20-21.  However, these documents were identified as being prepared or compiled at the request of counsel after litigation began and will not be compelled.

With regard to Document Nos. 11 and 25, the plaintiffs contend the defendant failed to identify an attorney author or recipient or other information to support the claimed privilege.  **See** Filing No. 190, p. 20-21.  Document No. 11, dated December 19, 2001, is described as "e-mails discussing litigation" between Michelle Walker and Olivia Crimiel-Minor.  **See** Filing No. 190, Exhibit 1.  The defendant asserts the document is subject to the attorney-client privilege.  *Id.*  Document No. 25, dated November 23, 1999, is described as an "opinion letter" from Angela Pitts to Connie Young.  *Id.*  The defendant withheld this document on the basis of attorney-client privilege and the attorney work product doctrine.  *Id.*  In response to the motion to compel, the defendant did not clarify the claimed privilege or address the plaintiffs' contentions with regard to any specific document.

Under the circumstances, neither the court or the other parties are able to assess the applicability of the claimed privilege by reviewing the privilege log with regard to Document Nos. 11 and 25.  However, Document No. 11 is a response by Olivia Crimiel-Minor to an inquiry from Michelle Walker, a legal assistant for the defendant, regarding a subpoena for documents in the "Rollins v. Woodmen matter."  Under such circumstances, Document No. 11 is subject to the attorney-client privilege and need not be produced.

Document No. 25 is a memo to Connie Young from Angela Pitts "RE: Olivia Crimiel-Minor – Dependent Care Program."  There is no indication about the title of either the author or recipient.  Equally unclear to the court, is the relevance to this matter of an

---

[7] Ms. Lundholm is counsel of record for the defendant in this case.

15

opinion about a dependent care flexible spending account that does not reference Rollins. Therefore, although the defendant has failed to meet its burden of showing Document No. 25 is subject to the attorney-client privilege, **see *Diversified***, 572 F.2d at 609, the court will not require production of the document, at this time.

### 5.     Sanctions

With regard to motions to compel discovery responses, under Federal Rule of Civil Procedure 37(a)(4)(C):

> If the motion is granted in part and denied in part, the court . . . may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

The defendant's failure to provide adequate information on the privilege log to allow the plaintiffs to access the nature of the documents, without court intervention, required the plaintiffs to file a motion to compel. The court shall, after defendant has a chance to respond, grant the plaintiffs' reasonable expenses for filing such motion, unless the defendant shows substantial and legal justification for the failure to provide adequate information on the privilege log or just cause why sanctions should not be imposed. **See** Fed. R. Civ. P. 37(a)(4)(A). Upon consideration,

**IT IS ORDERED:**

1.     The plaintiffs' Motion to Compel Production of Information Improperly Withheld as Privileged (Filing No. 190) is granted in part and denied in part.

   a.     **On or before April 6, 2007**, the defendant shall produce the "Society's guidelines for investigating internal complaints of employee discrimination" as discussed during Olivia Crimiel-Minor's earlier deposition, Document No. 8 (page 8 - Bates No. LR0915), the attachments to Document No. 12 (Bates Nos. 0962-0968), Document No. 17 (page 1 - Bates No. LR1213), 23.

   b.     **On or before April 12, 2007**, the defendant, at its own expense, shall produce Olivia Crimiel-Minor for deposition to respond to questions on the topic of the "Society's guidelines for investigating internal complaints of employee discrimination."

      c.     The plaintiffs' motion to compel is denied with regard to Document Nos. 2, 3, 4, 5, 6, 7, 8 (pages 1-7), 9, 10, 11, 12 (page 1), 14, 15, 16, 17 (page 2), 25, 26, 27, 32, 33 and 35, and with regard to deposition questioning of Olivia Crimiel-Minor in relation to the issue of her consultations with counsel.

      2.     The defendant shall have to **on or before April 6, 2007**, to show cause why the plaintiffs should not be awarded reasonable costs and attorney's fees incurred in bringing this motion to compel, in accordance with Fed. R. Civ. P. 37(a)(4)(A).

DATED this 23rd day of March, 2007.

BY THE COURT:

s/ Thomas D. Thalken  
United States Magistrate Judge